Good morning, my name is Harris Jones and I represent the Curtis family. What the district court did in this case is what the jury is supposed to do. The district court weighed the testimony of Mr. Curtis. It could have gone either way, admittedly, and it concluded that based on his testimony he did not manipulate the asbestos products of the defendants. I'd like to first address the burden. This is not a Celotex v. Cotrette case. Celotex v. Cotrette involved an admission in the form of an interrogatory by the plaintiff that she did not have a witness identifying an exposure by the decedent to the Celotex product at issue. That is not what we have today. In this case, the defendants all admit that there is a witness who testified about work with their products. The defendants all admit that that witness, Mr. Curtis, was available to them because they took his deposition. The defendants didn't meet their burden because all they did was cherry-pick selections from Mr. Curtis' deposition without presenting any other evidence. This is proving an element of plaintiff's claims. All three MSJs are predicated on one element of plaintiff's claims, not all elements. The only element attacked by the defendants is, did Mr. Curtis manipulate an asbestos component of the defendants' products? They do not present any evidence as to whether or not those products contained evidence. They could have brought evidence saying, we've looked at the products described by Mr. Curtis and we know these to be not asbestos contained. They never presented any evidence that the work described by Mr. Curtis, if it did involve the asbestos components of the products, could not have caused an asbestos exposure. And they did not bring any evidence that if that work caused an asbestos exposure, that exposure would be insufficient to cause the disease mesothelioma. Well, couldn't you have made this case a lot easier if when Mr. Curtis is now deceased, correct? That's correct. So if you had done a better job of straightening out the inconsistencies, I mean, if that had been followed up more in terms of the deposition testimony, and then also, too, now you're asking us to consider the deposition testimony of Mr. Mangum? I don't think it's necessary to consider. I know, but if all of that had gotten in, if the inconsistencies had been discussed a little more in detail when his deposition was taken, when he was alive, and if that Mr. Mangum's testimony was before us, it would be a lot easier case, wouldn't it? Yes. Okay. So why should we consider the deposition testimony of Mr. Mangum at this particular stage? I don't think you need to. I think that what Mr. Mangum does is corroborate everything that the decedent said happened. Now, what the decedent said happened is he worked with their products. He worked with them in a fashion that caused the release of dust. He testified that those products were asbestos-containing, and he had foundation for those opinions. His foundation was that he was an electrician of almost 50 years of experience, that he was trained in how to use this equipment in commercial and industrial settings, both by the United States Navy and through his four-year apprenticeship, which included two days of classes a week for the four-year period. He also testified that he could tell the difference between an asbestos and a non-asbestos product by its appearance. And what is important to consider here is that one of the defendants admits in an exhibit, the exhibit is called ABB Power Distribution Asbestos Information. It is page 408 of the record. This document is very significant. It says that molded asbestos materials were used in ABB arc shoots. ABB is the successor to ITT. So whenever Mr. Curtis describes work with an ITT product, that is now an ABB product. ABB says asbestos arc shoots had a modeled cement gray-white color, whereas the non-asbestos material is a more uniform cement gray color. The improved non-asbestos arc shoot molding are all black in color. Mr. Curtis says throughout his testimony that the appearance of the cement arc shoots and the Bakelite arc shoots had white swirls in it, that he could see fibers. He described discolorations within the product, which is consistent with the admission of the defendant, the moving party ABB ITE, with an asbestos component. All of the defendants admit that the products at issue included asbestos. Two of them say some of them did, some of them didn't. That is not sufficient to meet their burden. Schneider Electric, which is responsible for the Square D components, moved on whether or not the plaintiffs could prove that the products were asbestos containing. The evidence they brought is, one, that Mr. Curtis said he only worked with Square D breakers and no other product. In fact, Mr. Curtis testified that he worked with Square D motor controllers. At the end of the deposition, around page 1100 of a nine-day deposition of an elderly man with a cancer that did not take his life because he committed suicide because of the pain and suffering caused by that cancer, 1100 or 1200 pages into the deposition, when being asked about one particular job site, they asked him, did you work on circuit breakers for Square D? He said yes. Then they said, did you work on anything else? And he said no. Around page 100 of the 1200-plus day deposition, 1200-plus page deposition, Mr. Curtis testified he worked on motor controllers that included arc shoots, and the defense counsel never confronted Mr. Curtis with that testimony. This would be very clean for the appellees had the questioning attorney said, well, Mr. Curtis, in day one, two, three, six, you said that you worked with another Square D product. Are you saying that that didn't happen? And if he said yes, you know, I've thought about it, and I never really worked with that product. Well, we've got a different situation. That is not the situation we have before us. So you rely on MLD? Is that your case for inconsistencies that you're relying on? That's not the only case. I know that that particular case can be unpopular. I don't think that's the best support. With many justices, that's an unpopular case, and I understand that. The point is I would rely on Nissan, Fire, and Marine. You've got to resolve all questions of fact in favor of the non-moving party, and that is not what happened. What this judge said is, okay, he said in the beginning of the deposition that he worked with this stuff. He said at the end of the deposition he didn't work with the stuff. I conclude he didn't work with the stuff. That is the weighing of evidence. That's what jurors do. Let me ask you this. Let's assume, I mean, I've already discussed with you that the reed could have been thicker than it is if certain things had been done with Mr. Magnum and the inconsistencies had been probed a bit more. But let's just assume for the sake of argument that if we reversed in this case, I'm not saying that we haven't talked about it, so I don't know what we're going to do, but would the defendants then be free to move for summary judgment on a different ground on remand such as sufficiency of the medical evidence of causation? Because it seems that they got denied that. They didn't bring that evidence. They said that. So they said in their moving papers, I have all of the motions for summary judgment in front of me. All of them say you can't prove causation because you can't prove product identification and, oh, by the way, this exposure isn't sufficient to cause mesothelioma. They could have brought that motion for summary judgment or, more correctly, they could have brought that evidence but chose not to. The district court cites that the plaintiffs, the non-moving party, failed to bring a declaration from an industrial hygienist or a medical doctor. We would be bringing that in opposition to motions for summary judgment that brought zero evidence on that. The burden is on the defendants to bring this evidence. So they did make that argument. They presented no evidence. So it would be up to the district judge. I don't think so. I think they've shot their bullet and they missed. That's what I mean. They brought the argument. They didn't support it with evidence. The motion for summary judgment would be denied. Is that before us? Is the causation before us? They have made the argument, unsupported by evidence, that there is insufficient evidence to prove causation. I'll hear what they have to say, but I don't think that argument is before us. If it's not, then conceivably they could bring evidence on that and we would bring our evidence on that and there would be a determination. That's not what happened in this case. The Schneider evidence, let me address one thing brought up in the Cutler-Hammer and cited by the judge, that at some point at the end of the deposition, the decedent was asked what work he did on these pieces of equipment that included arc shoots. And at page 1,200, the 1,200 page mark, somewhere around there, he testified that he worked with the metal component. In the same pages they submitted, he talks about filing the arc shoots. The district court latched on to this testimony at the end, despite other testimony, even in cross-examination. I know that the appellees say, well, the plaintiff's attorney was asking softball questions and sure, he went along with it then, but when we cross-examined him, that's when the thing fell apart. Well, not true. With ABBITE, the plaintiff testified that, this is at page 1,226, is there anything about maintaining the larger breakers that you would have, that you believe would have exposed you to asbestos? Answer, and this is page 164 of the record, I'm sorry. Cleaning the arc shoots themselves, the contacts, anywhere around that, blowing them out later on, just general cleaning. That's another important part. There's testimony in the record about the use of compressed air to clean these asbestos components. That is not addressed by the defendants and their appellees and their motions for summary judgment, and it's not addressed by the district court. Secondly, another exposure brought in the facts was these asbestos components exploded. Mr. Curtis was an electrician. He worked in the Navy and in power plants. When there was a storm, lightning would hit things, cause electrical equipment to explode, including asbestos electrical equipment that he cleaned up. That is not addressed in the motions for summary judgment, nor is it addressed by the district court's order. Finally, on the testimony dealing with whether or not he recalled sanding the asbestos arc shoots, one defendant admits all of our arc shoots were asbestos. Eaton Cutler-Hammer says from 1940 to 1980, all of our arc shoots were asbestos. Oh, and by the way, there's other asbestos stuff in our products also. But at page 166, which is of the deposition, page 1230, Mr. Curtis, when being asked about arc shoots, testified that it was made out of probably concrete, like I say. It looked a lot like this pipe I had run earlier that I found out to be asbestos. Some of them were white, and some of them you could see. Take out the breaker itself, clean it up, sandpaper it, knock the burrs off of it, clean it with a carbon technichloride or another cleaning agency. This information was before the district court. This is not information that has been brought in after the motions. The court had these facts and did not consider them, and I'd like to save a minute for rebuttal. Thank you. Good morning. Can you hear me okay? May it please the court. My name is Michelle Barnes, and I represent Schneider Electric, which is also known as Square D in this case. I'm going to proceed with the first five minutes, and then counsel for ABB and counsel for Eaton will each take five minutes as well. We've tried to divide things up by topic, so there's not too much redundancy as well. I'll cover most of the product ID issues. Mr. Katterndorf for ABB will cover some of the causation issues, and Mr. Baronian will cover the issues related to procedure and Mr. Magnum's deposition, although it appears that may no longer be at issue. What plaintiffs have asked this court to do is to create a special exception for asbestos plaintiffs that the federal rules of evidence and the federal rules of civil procedure do not apply to asbestos plaintiffs. I don't think that's what's going on here. I think it's whether there's some inconsistencies in his statements, and they could have done a better job of straightening that out, but why isn't it up to a jury to determine that? It only has to be a pretty slim read to go to a jury. I think it's important to understand the procedural posture of this case. This case, plaintiffs sued 50 defendants. Mr. Curtis was deposed over a series of days. Plaintiffs interrupted that deposition numerous times to say that the time was up, nobody could ask any more questions. Defendants were given an average of 20 minutes to cover 40 years of work history with this individual. Plaintiffs needed to make sure that the sufficient evidence was in the record. What do you mean by 20 minutes? There were 50 defendants, so there were 50 people who needed to ask questions. And so when you broke it down, people were given an average of 20 minutes to cross-examine the plaintiff. Plaintiff has a burden of proof in this case on three issues, product identification, asbestos content, and causation. It all starts with product identification. With respect to Square D, plaintiff was asked to identify the electrical products he worked with. He identified five manufacturers, and Square D was not one of them. It was only after that when his own attorney said, didn't you work with Square D also? That's the identification of Square D and how it comes into this case. Plaintiff's counsel is then intentionally vague and mixing descriptions of products and components that might be used with products to create this supposed inconsistency in testimony and supposed question of fact. The fact is that plaintiff hasn't identified any specific product that's at issue, only classes and categories of products. We know from his testimony, however, that just saying that something is a motor starter or something is a breaker doesn't mean that everything that falls within that category is the same. Square D motor controllers, for example, were a fully enclosed box, such as the speaker that's sitting in front of you. The arc shoots in those were inside the box and could not be accessed. Mr. Curtis provides that testimony for us. So when he provides general testimony that throughout his career he used all of these manufacturers' products and he did the type of work that he explained on arc shoots, he's not talking about a specific Square D product. He's giving just vague, generalized testimony. All right, but why isn't that enough to go to a jury? That might be why you win. But, I mean, summary judgment is a pretty, you know, it's a pretty slim read can put you past it. It's a slim read, but the problem is we don't... I mean, it's not like you have a guy here that didn't work around asbestos. It's not like he didn't have the jobs that would put him in exposure. It's not like your product isn't mentioned. It just isn't okay. From what you see here, you could say, yeah, it's not the strongest case, or maybe that's why, but there's something there. But the test can't be... It's not like me as a judge that I'm saying that I worked on your, you know, that I've never been around any of that stuff. The test can't be if you manufactured any product at any time that contained asbestos, and if that plaintiff can identify your product, therefore you're on the hook. That can't be the test. If we're looking at a general product liability case, say, for example, someone sued Ford and said, your airbag killed me, you would have to say what the model and what the year of manufacture, or at least a general year of manufacture, that product was so that Ford could come in and say, the product you're talking about had an airbag or never had an airbag so that they could actually talk about that product and defend against that product. We're not even getting to the first step of identifying what the product is that we're talking about so that Square D or the other manufacturers can come back and say, no, it didn't. We don't get through the first step. Even if we do get past that first step and we assume that it is a Square D product that did have an arc chute, the work that he described was on metal components. The work that he described on nonmetal components was using a solvent on them. There's no evidence in the record that using a solvent on a nonmetal component, which may or may not be asbestos-containing. It seems the record's kind of inconsistent. He appears to contradict himself with respect to whether and how he physically handled and sanded certain electrical components. There is no specific evidence in the record that he ever did that work with Square D, and when he was asked the specific question whether he did do it with Square D, his response was no, he did not. He did not do it with an arc chute on a Square D breaker. He did not do it with an arc chute on any other product. So you can't take a general when you have a specific question. There's no conflict. It's possible that he did do that work on GE products or Westinghouse products, but that doesn't cause there to be liability against Square D. Unless you have any other questions that are specific to Square D, I'm going to go ahead and pass along to other counsels, because they have sufficient time. Good morning, Justices. John Cattadall for ABB. You have to know there is no justice on the Ninth Circuit. We're all judges. Thank you, Your Honor. Causation is very much at issue, and it was before the district court, and it was before this court. We know it was before the district court for two reasons. One, as we set forth in ABB's answer or answering brief at page 14, we literally quote from the district court's minute order of April 2013, in which the court said that the motions for summary judgment that we all joined in are for product identification and causation. Plaintiffs' counsel in their papers tried to sell the court on this. This is about product identification. This is about identifying asbestos products. Not so. Did the court rule on causation? Yes, Your Honor, the court did. In fact, if you look at the court's ruling, July 25th, sorry, July 15th order, which I probably have up here, Your Honor, the court devoted some discussion to what we've been talking about this morning, which is the rather scattered testimony or inconsistent testimony on what the gentleman did with the products, but the court went on and spoke at length for two or three pages about causation. In other words, even assuming that there was some asbestos in the Appellee's products, he talks about their expert, Charlie I, and how his opinion was inadmissible about potential exposure to asbestos from those products. The court talked about the fact that plaintiffs failed to meet their burden, which they have from birth to death in the case, to prove two things. One, exposure to asbestos from the defendant's products, and two, and these are intertwined, that the exposure was a substantial factor causing the disease. That's where the expert testimony comes in. No lay witness can give you that foundation. No lay witness can give you that opinion. It has to come from an expert. Plaintiffs' lawyers knew that. That's why they called on Mr. I, but it turns out they brought in a career professional insulator to talk about an electrician's experience, and he had no foundation to do so. There's nothing in his CV, nothing in his declaration that says he did. He did no testing. He couldn't talk about fiber release. So causation was before him, not only as reflected in Judge Anderson's ruling granting summary judgment, but in the minute order, saying that these motions will be about product identification and causation, and if you look at ABB's notice of their motion for summary judgment and the text of our motion, we talk about causation. We point out that the plaintiff has not proven exposure to asbestos from our products, but in any event, he hasn't proven what that exposure would be if you assume, arguendo, there was asbestos in the product, which takes us to what the standard on causation is for this case. It's the Lindstrom case from the 6th District. It's a 2005 decision. It came up in the context of maritime law, which plaintiff's counsel admits was the basis for jurisdiction in this case, and in that decision, Your Honors, the Lindstrom court said the following, and this is at Lindstrom, the AC Product Liability Trust, 424 F. 3rd, 488, 2005, at page 492, minimum exposure to a defendant's product is insufficient. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient. Rather, where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury,  that an inference that the asbestos was a substantial factor in the injury is more than conjectural. Well, but if you say that, but what if we were to conclude that he did show he was exposed, then how, then that would, that infects the district court's ruling. That raises the second prong of what the plaintiffs have to prove, Your Honor. They have to prove threshold exposure, exposure to a product that has asbestos in it. That's number one. That's under the California Supreme Court standard in Rutherford. But what if I think that they did? What if I think they met that burden? Then what they would have to prove at trial and what they would have to prove in opposition to summary judgment is that they have some admissible evidence quantifying it in some way. They can't just say, I took a piece of sandpaper to an arc shoot and sometimes it may have had asbestos in it and sometimes it didn't. We don't know how much or how often. We don't know how much, if any, fiber was released by these phenolic plastic materials or the cement type arc shoots. There's nothing before, there was nothing before the district court and there would have to be something before him or before the jury or there is no way the plaintiff meets the second prong of the standard of causation. It's a big zero. They leave us, basically they invite a coin flip. And that's what they did with this judge and the district court judge was not going to let them go to the jury and ask them to flip a coin. If they had any evidence, Your Honor, on that second prong, they had to produce it because the burden shifted to them and they failed to produce that. They went with Charlie I's deposition, or sorry, his declaration, which was held inadmissible, and they went with Mr. Curtis' testimony. And I think I've overrun my time. Sorry, Your Honors. This is Robert Baronian for Respondent Eaton Corporation, which is here for Cutler-Hammer. I've never seen lawyers move that fast. Well, we're trying. I'm looking at the clock and I barely get my name out. Well, you've actually done a really good job of keeping track of each other's times. Most of the time, the first one hogs all the time and leaves nothing left, so I don't want to take your time. So how much time did you think you had? It shows 303 here. No, but what were they telling you you would have? Oh, we were going to split five evenly, 15, 5, 5, 5. So can we give him five? Sure. Okay. That's very kind. Thank you. All right. Well, I think a number of the points have been made. I can respond to questions. The bottom line is this. The Court has raised an interesting question, which is, and it's true, in these cases, and that was what happened here, and I've done these for over 30 years so I know, when you have a mass of defendants like this, over 50 being sued, it's a very difficult organizational thing to take these depositions. And what ends up happening is as the deposition continues plodding along, invariably you get into that time crunch where the plaintiff's attorney is saying, look, we've got to get out of here, let's go, let's go, hurry up, hurry up, and people towards the end are getting squeezed, and you end up with 10, 15 minutes to ask your questions. The bottom line is, with respect to my client, it's very clear that when he was asked specifically as to Cutler Hammer, he said that, and it's cited in the brief, it's in tab 36 of the supplemental excerpts, 1472 and 1475, and this is that portion I think Your Honor referred to earlier, where he said very clearly, and again sir, the question, and again sir, you've told us this already with respect, with regard to other manufacturers of arc shoots, but you never had to drill or cut or abrade or sand any of those arc shoots, correct? Answer, I would use a light abrasive sandpaper sometimes. Question, and that's for the carbon buildup on the metal part. Answer, yes sir. Question, correct. Answer, right, where it contacts. Question, but nothing other than that, correct? Answer, right, yes sir. And then, a little further on, three pages later, and as you told us before, you never had to drill or cut or abrade any of the materials associated with the arc shoots. Is that correct? Answer, no sir, I did not, no sir. To say that in the beginning there's inconsistency, I mean this is crystal clear, this is putting the exact issue, really the gravamen of this case, because in an asbestos containing product, such as what's alleged here, it doesn't matter if this is asbestos containing, we said it here, none of us are in danger. The only time there's a problem is if you do something to it, abrade it, sand it, do something to it to liberate fibers from within. And he did say he sanded though. Well, he said he sanded the metal parts, and he said that just now. And then it goes on to say, question, I'm talking about the actual contacts themselves. You would not varnish or do anything to the contacts that would damage the surface. The contacts are the metal copper pieces that open and close to allow the electricity to flow. When it opens, electricity can't flow. When it closes, electricity can't. And he says, oh, we would work, we could use a file on those surfaces. Question, on the metal surface? Answer, on the metal surface, sure. They were 100% copper. If they were pitted in, then we wanted to take those pits out because those pits would just got worse. Question, and sir, for those arc chutes themselves, would you use any kind of cloth or a kind of paper to get the carbon off the arc chutes? Answer, we'd use carbon tetrachloride. They had cleaners and they had sprayers. CCR makes a bunch of sprays for cleaning contacts. Later on in the years, they came up with many products to do this job. Question, and those are all solvents, correct? Answer, yes, yes. And then further, he says at page, I mean, in the same record, it's for, well, this is actually from the excerpt from Plaintiff, tab 12479. Sir, question, sir, for the Bakelite casing, do you recall specifically ever having to cut, drill, sand, or abrade any Bakelite casing associated specifically with Cutler Hammer equipment? Answer, I can remember touching up the side of the Bakelite where the contacts went together and cleaning that with a solvent. And then he goes on to talk about file, but he's asked again, was that a solvent? And he said yes, and he said it was true for all manufacturers. So the point I'm making, and I think the gravamen of this case is, and why the district court judge did what he did, is because bottom line, when you distill this case down to its essence, the testimony is clear that he did not sand, drill, cut, abrade, do something other than to the metal surfaces. And that was what the district court judge held, and as was pointed out by my co-defendant, under Lindstrom. Did he have to weigh the evidence to do that? No, I think he looked at the testimony when the specific question was asked that you got the specific answer. Because I think at the beginning of the deposition, there was generalized statements made in a patterned boilerplate approach where every defendant's name was substituted. A series of four or five questions were asked, and each one was cycled through, and you got this general testimony. But when each defendant sat down and specifically asked, as we did specifically for our client, and then even asked this question, and that would be true for all manufacturers, correct, and the answer was correct, that's pretty clear cut. I submit that's what happened, and that the evidence is clear, and that's why the judge did what he did, and it's the right ruling. And I believe the appeal should be affirmed, not reversed. Unless you have any questions. All right. Thank you. As counsel just admitted, and the district court admitted in their order, the district court disregarded the general testimony of the plaintiff found in the first two volumes of the deposition, and gave greater weight to the question in page 1,200 or so,  in a way to release asbestos fibers. I would note that no counsel that approached this podium ever addressed the fact that Mr. Curtis cleaned up after these asbestos products exploded. That was not addressed by any of the counsels in their motions for summary judgment. It was not addressed by the district court, and it wasn't addressed in argument. Nor did they address the fact that compressed air was used to clean these asbestos products. I want to ask you a question about the causation. Because I am looking at the district court's order, and apparently there was an aye declaration that was the district court didn't allow in. Is that correct? Yes, Your Honor. Okay. And it says in its decision, without the aye declaration, plaintiff has no admissible evidence that decedent was exposed to asbestos from defendant's products. That was a substantial factor in causing decedent's mesothelioma. So it seems that causation was dealt with then. I agree with Mr. Catterdall that the order setting up the motion for summary judgment said causation was at issue. I agree with all attorneys here that the motions for summary judgment said the word causation. And I also agree that according to Nissan Fire and Marine, a moving party may not require the non-moving party to produce evidence supporting its claim or defense simply by saying that the non-moving party has no such evidence. And they have all admitted they brought zero evidence on this issue. So I wanted to come back to your question of me, Judge Callahan, as to whether or not causation was at issue. My answer is yes. And as to your question as to whether they would get to bring another motion for summary judgment on causation, I would think no. They had their chance, it was set up to do it, and they brought absolutely no evidence. So the district judge, it seems like it's not that specifically laid out here, but it does sort of seem that the district judge throws that in and says without the aye declaration. So why are you arguing? What's your position about the aye declaration? I think it's sufficient, but I don't think I need it. But it wasn't let in, right? I agree. And why was that? Said it didn't have foundation for the statements. But Mr. Aye is an asbestos specialist registered by the state of California. But it's not necessary. The questions of Mr. Curtis, in his deposition, he testifies that these products were asbestos containing. Within the deposition, there is no objection based on foundation to those questions. So they can't today object that he didn't have foundation. Did you claim that it was error to exclude that, the aye declaration? Yes. In your brief? Yes. Your opening brief? Yes. So the lack of foundation was, were they arguing that because he's not an expert in causation? No. That declaration was offered for the fact as to whether or not the components described by Mr. Curtis were asbestos containing. And the only evidence on this subject is from Mr. Curtis, who actually worked with the products and was an almost 50-year electrician, from the defendants themselves that admit that they made asbestos products that looked just like the ones he described, and Mr. Aye's declaration, which was struck by the district court. I think that was error. However, I don't think it matters. I don't think we need to get to Mr. Mangum. I don't think we need to get to Charlie Aye. The fact is the defendants frame. So Mr. Aye is talking about his own experience? Yes. But he can't say what Mr. Curtis' is? I think there was some confusion. At the time Mr. Aye wrote that declaration, he said within the declaration that he had not reviewed the discovery responses of. Well, he says, I reviewed portions of Mr. Curtis' deposition, in which he recalls working with defendants' electrical products or something. Yes. And then he goes, and then, it's my opinion to a reasonable degree of probability appropriate to the field of asbestos consulting that it is more likely than not that Mr. Curtis inhaled asbestos relays from the defendants' products while he worked with them and while standing next to others working with them. So it was that he didn't, the court said that he didn't have expertise? He wasn't, was that the problem? Yes. All right. Thank you. If I could make one last point. Both Eaton and Cutler-Hammer allege that there was no testimony concerning their products other than that testimony at the end. I'll note that ABBITE does not make that claim because in cross-examination he specifically discussed sanding art shoots. Eaton, the record pages 83 through 88, he describes sanding art shoots, cleaning up after exploded products, and for Schneider, square D, pages 91 through 95 of the record, the witness describes cleaning asbestos art shoots, using compressed air, and cleaning up after exploded asbestos products. Thank you. All right. That's it. What did you say? May we have one minute to address the representations about the Charlotte High Depth Declaration? Do you want another minute? Well, that's... All right. Very briefly, you asked counsel whether they had challenged the district court's ruling on Charlie I. Very specifically in their reply brief at page 24, they state, it is for this very reason that plaintiffs did not challenge the district court's erroneous ruling excluding the declaration of Charlie I. That was not before this court. And also, the issue of Charlie I was not only that he did not have expertise, but also his opinions were excluded under Daubert because he was not relying on any studies in providing his opinions that there was fiber release in the practices that were described by Mr. Curtis. Five, ten seconds. I have A, B, D. Well, I'll be the traffic. Yes, sir. Go ahead. If we didn't... You have to talk. You have to be here because we take your picture and your fingerprint and it's all recorded. Yeah. Okay. All right. Two things. One is... That's a breathalyzer. I was not at the karaoke bar last night, Your Honor, so I'm clean. Two things. With regard to Mr. I, as he says in his declaration, Your Honor, as I'll have it, he never even looked at any of the documents specific to our clients. He did not, and he did not look at the portions of Mr. Curtis' deposition in which the admissions came in about not sanding the arc shoots. And lastly, with regard to the last comment from Plaintiff's Counsel, with regard to my client, A, B, B, we are claiming that he did not sand any of our arc shoots and we're relying on the testimony that Mr. Baronian just read to you in which the witness, Mr. Curtis, said, my testimony about that applies to all the manufacturers. All right. Okay. Can I have a second? Wait, wait, wait. Sit down. Down, down. Go ahead. I doesn't matter. They didn't meet their burden. Thank you. Simple. All right. You can do some calisthenics outside. Thank you, Your Honor. Thank you. Thank you.
judges: Bastian, Pregerson, Callahan